Good morning, ladies and gentlemen. We have five cases on the calendar this morning. A trade case in the court of international trade. A patent case from the district court. Three government employee cases. Two of which are being submitted on the briefs and will not be argued. So we have three argued cases. The first is Koyo Corporation v. United States. 06-12-26. Mr. Curley. Good morning, Your Honor. The question of the decision today is whether Section 1504D, the deemed liquidation statute, when applied to the entries in issue, produces an absurd result. The trial court... Doesn't it seem to be absurd to you, to the average individual, as to the result of that transaction? Well... The importer comes in, deposits at a certain rate, which is the AD rate, and after travails of 10 months, 20 years, 30 years of litigation, comes up with a different rate from the Commerce Department, and it's filed in the Notice of the Federal Register. And Commerce publishes it. Customs says, I'm not going to follow that. Well, Your Honor, they didn't say they weren't going to follow it. They just... they didn't liquidate it in a timely manner. It wasn't that they weren't going to follow it. So they sat on their rights, they did nothing at all, and six months later it's deemed liquidated at the original deposit rate. That's what the statute says it should be. And... Now, if you liquidate... Excuse me. If you liquidate it before the six months, you'd have to follow the Commerce Department. Is that correct? Yes, that's right. And if you don't liquidate it within the six months, then you just sit and do absolutely nothing, liquidate it at the original deposit rate. That's what the statute says has to be done. And this is not a case of first impression. This is not one in which this Court has not ever looked at this statute before. In the last five years or so, there have been at least four or five decisions in which this Court has addressed 1504, the deemed liquidation statute. But not right on point. Not right on point, Your Honor, but the reverse certainly has. In the NEC case decided a few years ago, it's quite similar. There was long litigation to determine the rates, and when the rates were determined, the matter was... customs was instructed to liquidate. They went ahead and liquidated at the amended final results rate that were affirmed by the Court. And then there was a protest saying that the entries had been liquidated before that because of an email that Commerce had sent to customs, which customs didn't recognize as being a removal of suspension, but which this Court said it actually was. And as a result, this Court set aside the custom of actual liquidation and ruled that the entries were deemed liquidated. Indeed, the same trial judge had that case before the Court of International Trade. Now, here we have a situation in which there was litigation to determine the rates. After the judgments became final, the time for appeals expired, suspension was removed, Commerce published notices in the Federal Register which notified customs that suspension was removed. The liquidation instructions issued a few months later, but customs neglected to liquidate the entries in a timely manner. The same statute applies. There is no exception. On its own negligence, then, it can just sit and do absolutely nothing and reap the benefits of the original rate, which has been determined to be erroneous by the Commerce Department. The government is not benefiting from that. They're not reaping those rates, Your Honor. That money under the Byrd Amendment is then paid out to domestic producers. It's not as if customs is filling its coffers with duties that they are not entitled to. They do not keep those duties. But, Mr. Curley, wouldn't you agree with me that even if we agree that 1504 is clear on its terms and that it has the effect of deeming the liquidation at the original rate by operation of law, won't you agree with me that the result is unjust and unfair? It just doesn't make sense, does it? There is an unfairness in the statute itself. It's not necessarily in the results. It's in the statute itself. Well, maybe the unfairness is not necessarily in the statute itself, because I understand how the statute works, and Congress seems to have made its intent quite clear. And sometimes there's an advantage to the importer. Sometimes there's an advantage to the government. I understand all of that. But there seems to be a basic unfairness here, and the trouble I'm having is that the unfairness, it seems to me, would be remedied if the importer had recourse to or had the ability to file a protest,  and if the propriety of the deemed liquidation was before an appropriate tribunal, then it would seem to me that the result would be clear, because there's already been an adjudication by Commerce of what the rate should be. Commerce instructed Customs to apply that rate, and Customs would normally apply that rate, but for the fact that the statute triggered the deemed liquidation automatically. If there's some appropriate recourse by way of protest, it seems to me that there would be no need to interpret 1504 under the absurd result rule. Well, in that case, when you say an appropriate recourse, what you're saying is that whatever tribunal would be hearing it just simply wouldn't apply the statute, because if the recourse is that the importer will protest the deemed liquidation, what is the issue? The issue is whether the deemed liquidation applies or not. Were the conditions satisfied, as said in Fujitsu, as laid out there, were those conditions satisfied? And if they were satisfied, then the entry is deemed liquidated. That's what this court has said. It set aside Customs liquidation in the NEC case, which was just as unfair to Customs as perhaps. But if it was appropriate to protest the deemed liquidation, then wouldn't the importer have the opportunity to argue that the deemed liquidation should not apply because there was a prior determination and an administrative determination of a rate that should actually apply? That's the issue in every case. The question is whether deemed liquidation applies. There is always another rate that should be applied, the cash deposit rate if the entries have been deemed liquidated. That happens no matter what. Isn't it your view, Mr. Curley, that fairness isn't the issue here? It's the application of the statute. It is correct. And I think that the court should apply the statute as written by Congress. It is not inconsistent with congressional intent. It's not inconsistent with the plain meaning of the statute, as this court has found in Fujitsu and other cases. And it certainly satisfies all the requirements that Congress set out. The precedents of this court are fully satisfied with it. In the Reedham case decided about 10 years ago, this court applied the rate asserted at entry, even though that rate was higher than the administrative review rate. You say that this is not a case of first impression and that there are precedents. Are you suggesting that Judge Rusterni didn't follow our precedents? I don't think she followed the precedents at all. I think she was just upset with this and felt that the importers should receive a refund here and that it wasn't fair not to give them the refund. But this is always the case in deemed liquidation. The other way it's happened, customs doesn't get its duties. In NEC, there was $14 million that customs lost out on that to have it be repaid to the importer. But this is not a case where there has been an administrative determination. This is a case where there has been an administrative determination. So you have a situation where the liquidation is suspended, suspended in order to permit the administrative proceeding to go forward. The administrative proceeding is concluded with a determination that a lesser rate should apply. Customs is then obligated to follow that instruction. But in this case, customs didn't get around to doing it before the six-month period had tripped. So you have to agree with me that it's a little odd to have a liquidation suspended for an administrative proceeding to be concluded. And then when it's concluded, if you ignore it, despite the obligation on customs part to follow it, if you ignore it, it's okay. It becomes, in effect, null and void. Well, this is always the situation when you have a deemed liquidation.  I realize that, but there's not always a prior administrative determination which has some force and effect. It has some meaning, and there is some obligation on customs part to follow it, is there not? Yes, there is an obligation to follow it, but they neglected to do it. But I think you cannot lose sight of how this court has decided those cases. In NEC and the other cases cited in our brief, customs liquidated at the rate they were instructed by Congress to do. That was affirmed by this court. And the court then, because the entry was untimely, it had been deemed liquidated, set aside customs liquidation and ordered that the entries were deemed liquidated. It is the same situation. It's just a mirror image of it. Now, the question is, we have a statute, and the statute is clear. And this court has said it's clear. And it is not inconsistent with congressional intent to apply the statute where the administrative review rate happens to be lower than the cash deposit rate. That's been done before in the Green case. And this is consistent with this court's precedence. And I don't think the remedy here is the correct remedy, is what the trial court did. Just refuse to apply the statute. It's not fair. And order that customs reliquidate at the administrative review rate. Mr. Curley, what would be the correct remedy? After 20 years of litigation to establish a rate, the Commerce Department publishes it in the Federal Register. Customs is on notice of that rate, may take no action. What would be the proper remedy? The proper remedy here would have been that after the customs received notice of removal of suspension, as did the import with the publication, it's noticed everywhere. They should have monitored this. They should have gone to customs when the entries weren't liquidated and said, you haven't liquidated my entries. Please do it. And I think why is it incumbent upon the importer to do that and not upon customs? I mean, they're as much of a part of the government as commerce is. Commerce takes an action, and customs totally disregards it. They just sit back and do absolutely nothing for six months. They could do this every time. Well, but they don't do it every time. You only see the rare exception cases that come up. The usual thing is that these entries are liquidated in a timely manner. So how is it supposed to be corrected, the imbalance supposed to be corrected? I say they should have gone to them and mentioned it to customs. My view is that once they told customs, the entries would have been liquidated. We cited you a case. There's no precedential opinion, but there is a judgment there. In which an importer of bearings came in and did exactly that. And when customs didn't liquidate close to the six-month period, they went to court and asked the court to issue an order to require liquidation within that time. Customs then got to finish the liquidations, and the entries were all liquidated before that, and the court entered a judgment dismissing it as wrong. That's what should have happened here. And if they hadn't, if customs had not liquidated as the six-month period was approaching an end, they should have gone to court like this importer, the other importer, the NMB importer, and asked the court to order customs to liquidate within the six months.  In which an importer asked for a scope review from commerce. And the scope review was supposed to be done in 45, or initiated in 45 days, or was it? And the importer sat back for nearly a year as I read the opinion in the case. And then came in and asked for mandamus. And mandamus was denied on the grounds that it waited too long. And in addition, they failed to exercise an ultimate remedy. Come into the court and ask for an injunction to order commerce to conduct the scope review. There is no real difference in ordering commerce to conduct the scope review, something they are obligated to do under their own regulations. And asking customs to liquidate entries which they are required to do likewise. But they're not required to do it within the six months under the statute. I beg your pardon? They're not required to do it within the six months under the statute. There's no mandate that they do it within the six months. Well, the statute provides for an alternative if they don't. Right. So, I mean, there's no penalty if that's what you're implying from the statute. But on the other hand, it is a mandatory thing inasmuch as if the entries are not liquidated by customs within that time. Well, there is a penalty on the importer if customs does not act within the six months. Well, sometimes on the importer. In this particular situation, there is a penalty on the importer because of the inaction of customs within the first six months. That is not a penalty, Your Honor. What that is is that's carrying out the statute, which is Congress's intent to increase certainty and to end the liquidation process so that importers are not assessed additional duties later. That's exactly what they had in mind, and that's satisfied here. The liquidation came to an end in six months. The importer here was not assessed additional duties, and that's satisfied. That's the benefit importers get. They don't necessarily get a lower rate. That's not what the benefit expressed in the legislative history is. The benefit is to end the liquidation process in such a way that you have a final liquidation and that the importer is not assessed additional duties. The importer here was not assessed additional duties. It paid its duties at entry. Mr. Curley, you've exceeded your time, but since you've been responding to a lot of questions, we'll give you back two minutes of rebuttal. Thank you very much. Ms. Fraser. May it please the Court, good morning. Good morning. This is a straightforward case with two independent, quite separate reasons why the Court should affirm the ruling below. You mean it's not an absurd case? The absurdity ruling below should be upheld because application of 1504D to this situation where there are refund entries upon which customs sits for over six months, application of the statute to those situations is absurd. What about the clear language in the statute? Language is clear, isn't it? That's right. That's the absurdity doctrine. Even if the language is clear, if the result as applied to a particular situation is absurd, then the absurdity doctrine can be applied and the statute is ruled not to be applicable. But even if the absurdity doctrine is not the way the Court wants to go here. Where does that absurdity doctrine come from other than New York City? From the Supreme Court in Holy Trinity. But even if the Court does not want to follow the CIT's reasoning below, the Court should affirm the CIT's ruling for a completely different wholly independent reason and that is because a plain reading of the statute and regulations requires it. Here, it's a three-step walk through the statutes and regulations. First, the liquidation, the deemed liquidation and the subsequent notice of liquidation by customs was contrary to statute, contrary to 1675. It was properly protested in a timely fashion according to customs' regulations. And three, the protests were wrongfully denied by customs. How were they wrongfully denied? They were wrongfully denied because the protests should have been granted because the deemed liquidations were contrary to 1675 and the will of Congress for liquidations to be assessed the duty in the final assessment read. But in 1504D, if customs just takes no action at all within six months, there's a deemed liquidation provision. That's right. It is perhaps, if the observability doctrine doesn't apply here, those entries are deemed liquidated. McCoy's argument is regardless of whether these entries are deemed liquidated, 1675 still applies. Those two statutes are to be read in perimeteria. Deemed liquidation is not a magical or mysterious process by which entries are somehow terminated and you can't protest. It is just one means by which an entry becomes final and right for protest, which is what Coyo did here. But at what rate should that liquidation be? It should have been at the lower rate mandated by 1675. What if it was a higher rate? Would you be here complying? We would not be protesting that, no. And then customs would suffer from the failure to comply with the deadlines. But they would suffer from not complying with the deadline at that point. Now, they take advantage of the deadline here. So why the difference? It all depends on whose ox is being gored, is that it? Well, the key point to remember here is that customs is in the driver's seat the entire time during this administrative process. Once we get the final rate from commerce, it is customs that decides whether to actually perform the liquidation or whether to sit and do nothing for over six months. Coyo has no remedies during that six-month period, and customs either will liquidate the entries according to law or it won't. If it does, no complaints. If it doesn't, we have protest rights. Do you have a duty during that six-month period after the Commerce Department does publish its notice in the register, the Federal Register? No, Your Honor, we don't. Why not? Well, first of all, there's no statutory duty to do that. There's no formal process. But there are millions of entries a year, and it's a little bit like telling a taxpayer that it needs to petition and write letters to the IRS to ask where its refunds are. It's like a black box. There would be no effect to the letters whatsoever. And Coyo takes the position that there's no need to do these useless contacts of customs when if customs doesn't liquidate, we have a remedy. Why is the government, why is the statute, the liberal reading of the statute, absurd rather than simply unfair? It's absurd because the congressional intent here was twofold. One is to protect importers, and the government pretty much ignores this argument altogether. It's not to benefit customs by letting it profit from its own inaction. It's to benefit importers. And two, it's to encourage prompt liquidation. So it doesn't fully fit and achieve the supposed objectives. Is that absurdity? Yes, Your Honor, it is absurd. In certain circumstances, it's absurd just as Holy Trinity, application of the statute there was absurd to apply the literal reading of the statute in that case. Don't you have a recourse here, petitioning Congress to change the statute because of the, quote, absurd result? That is one option we will look at is to get a bill of Congress to remedy here. But Coya would argue there's already a remedy here. There's no need to resort to Congress. There's no need to resort to courts. We've got a remedy in the administrative proceedings. We took advantage of that, and it was well within customs power not only to liquidate the entries within six months but to grant our protest, as it should have been, and then we would not have been here. Ms. Fraser, I'm sure you agree with me that the absurd result test doesn't apply every time someone perceives an unfair result. That's right. I mean, isn't that doctrine a fairly narrow doctrine that only applies where it's from the wording of the statute, it's apparent that Congress could not have intended such a result? That's right, and Coya argues this is an exceptional case where Congress... But here, the congressional intent is quite clear, and the congressional intent from the language of the statute is certainly unambiguous that at the end of six months, after the suspension is lifted, if no liquidation takes place within six months, the liquidation is deemed to occur at the original rate. And that's exactly what Congress intended, is it not? There is an element of finality in the congressional intent, but that's not the only... I mean, you may not like the result in a particular case. Sometimes the importer doesn't like the result. Sometimes the government might come up short. But Congress intended for this to happen in the statute. There's no mistake about that, is there? Congress also intended for there to be prompt liquidation of the entries, and the application of this statute to refund entries encourages just the opposite. Instead of being encouraged to liquidate quickly and collect extra duties, customs would be encouraged to do nothing and let it liquidate at the high rate. So that's, frankly, the more absurd part. If we disagree with you on the absurd result, application of the absurd result rule, tell me about the recourse available to COYO in terms of protests and the timeliness of the protests that took place here. Well, here, even if the court does not agree with COYO and the court below that application of 1504D to refund situations is absurd, that's fine with this case. COYO still wins because it protested, timely protested, each of the three deemed liquidations according to customs regulations. Is a deemed liquidation a protestable matter? Absolutely. This court has held in CMEX 384F3D that deemed liquidation, like any liquidation, is protestable. Even adverse deemed liquidations are protestable. And when must such a protest be filed? The customs regulations at 159.9 require a protest to be filed within 90 days after notice is posted of the deemed liquidations. Are notices normally posted for deemed liquidation? They are, Your Honor. And in this case, there was a notice published under the requisite form 4333? Yes, Your Honor. That notice was posted sometime after the six-month period had expired. Right. What would happen if customs didn't publish that notice? In other words, customs just same scenario here. There's an administrative determination and commerce instructs customs to apply a different rate. Customs takes no action within six months. Therefore, 1504, deemed liquidation at the original rate, and then customs continues to sit on it and never publishes the notice. What recourse does the importer have? Well, that's a great question, and it's one that Congress has recently answered in its 2004 amendments to the statutes. Importers have been, frankly, begging Congress and the agencies to provide it with protest rights within 90 days after the deemed liquidation occurs rather than having to wait on customs to post notices of that. Congress has now given importers the right to protest deemed liquidations upon deemed liquidation. But at the time in 1998, when these entries were deemed liquidated, the regulation was quite clear, and today it's still quite clear. Customs has not amended that regulation, and maybe it won't. But today that would not happen. Coyote and other importers could protest within 90 days after the six-month period ends. At the time that this happened, Coyote had to wait for the bulletin notices to be posted, and luckily customs did that in this case. But why would that be correct, though? If it's a deemed liquidation, even under the old statute, at the end of six months, it's deemed to be liquidated. So why wouldn't the 90 days start to run from that point? The courts have held, this court, in fact, has held much to the chagrin of importers that deemed liquidations are not protestable events. Now that jurisprudence has changed over the years, and it has become more clear. In fact, when Congress said that deemed liquidations are protestable upon six months, the six-month clock ending. But at the time, it was far from clear. In fact, the black-and-white letter of the customs regulation said you protest within 90 days after posting of that notice. Importers are delighted that we now have protest rights. But that's under a statutory amendment, under the 2004 amendment. That's right. It doesn't apply here. It was absurd to me when you read some of the cases as to why automatically, because it's deemed to be at that point. So it should be an automatic 90 days from that time period. That's what importers have been arguing. That was not the case law at the time. I understand that, but it doesn't make any sense to me. It doesn't to us either, Your Honor. As I understand Mr. Curley's argument, even if you had a right to protest, the result of that protest, as I understood his argument, would be simply a determination that the deemed liquidation rate, the original rate, would apply. Right. That's a very convenient argument for the government. The government would prefer that the court not look at all at 1675. In fact, in its brief, I think at page 31 of the blue brief, it says that somehow 1504d trumps the application of 1675. And Coya would note that the government has tried that argument in reverse, and that was rejected by the court in International Trading Company. The government argued that application of 1675, a different subsection of it, but that statute, prevented these injuries from being deemed liquidated whatsoever because 1675 trumps 1504d. And this court flatly rejected the government's position and said, no, absolutely not. 1675 and 1504d were enacted as part of the same Tariff Act of 1930 and amendments there too. Under the Doctrine of Imperii Materia, these two statutes are to be construed together. And that holding was affirmed in Ambassador Florsheim and in CMEX as well. And in CMEX, the court said that 1504d liquidation fits nicely within the protest scheme, and the protest here is an unlawful liquidation under 1675. Thank you. If there's nothing further, we'll hear. If I may make one point, please. The government says that it is not lining its pockets, that Customs is not lining its pockets with the revenues it has taken from Coya or refused to refund from Coya via the Byrne Amendment, and Coya notes that the Byrne Amendment applies to entries that are liquidated on or after October 1, 2000. And the entries here should not be subject to Byrne Amendment whatsoever. So the profits, the monies that Customs has refused to refund, are still sitting within the Customs coffers. Thank you. If the government had been lining its pockets, Mr. Curley wouldn't have gotten through the metal screen. Mr. Curley, you have up to two minutes to respond. That's a new argument on the part of the reporter. I didn't see that before. I would have researched that if that were the case. In answer to your question, gentlemen, you asked about protests. There are two types of protests. Customs recognizes the entries deemed liquidated. They post a no change or as entered liquidation, which is what happened here. The question then is, because it's after the six-month period, more than 90 days after the six-month period, does deemed liquidation apply? Are there factors satisfied that make the deemed liquidation? If an importer protests within 90 days of the deemed liquidation, regardless of posting a notice, Customs recognizes they could act on that within the 90-day period. There is a statute that's been recently passed that allows Customs to do this on its own under 1504B, like an actual liquidation under 1500. Your question then would be, why in the world would you need a statute then to do it if Customs says it can do it all alone? Customs believes that the statute is declaratory of existing law, that they've always had an inherent right to correct their own mistakes within 90 days. That's their position. There are no cases on it that I know of. There is a decision from the Court of International Trade that says that the deemed liquidation can be protested. But again, I think it may be indicative. It wasn't actually issued before the Court. What's the difference between protesting the deemed liquidation within 90 days after the end of the six-month period and protesting the posting of the deemed liquidation, which can take place sometime thereafter? The posting of the liquidation reflects Customs' recognition that a deemed liquidation takes place. The protest then would be... Does that not constitute a notice of liquidation? Basically, what it does is it constitutes a notice that Customs recognizes that a deemed liquidation has occurred. That's what the regulatory provision says. The statute says Customs has no obligation to post a notice of deemed liquidation. That's in 1504B. But in this case, they did. They did, and the regulation... And there was a protest filed within 90 days thereafter, at least with respect to most of these. Right. After that 90-day period, after the protest period expires and the entries are deemed liquidated, Customs views the 90-day period as a window in which they can correct whatever mistakes they might have done. If they didn't attend to something they should have, they believe they could do it. The 90-day period passes. Then, as far as Customs is concerned, they believe that the only issue then is whether a deemed liquidation occurred. Did the factors that make for deemed liquidation happen? And if they have, that's the end of it as far as Customs goes because a deemed liquidation is a final liquidation. But, Mr. Curley, in that event, then, what you're saying is at the end of the six months, the deemed liquidation time period then starts running for the 90 days... Yes. ...with or without the statutory amendment. Yes. Because if there's no requirement for Customs to publish the deemed liquidation notice, then the 90-day time period should start running from the six-month period of the deemed liquidation under 1504D. Yes, and there is notice. When Congress publishes its notice of amended final results and final court decisions in the Federal Register, this Court has said in international trading that that's notice to Customs. But it's notice also to the importers, so they know that once that happens, the six-month period for Customs to liquidate is already running. And if Customs doesn't liquidate within that time, then the deemed liquidation has occurred. This is what prompted me to point out the voluntary nature that if COYO had gone in and told Customs the six-month period is running, please liquidate our entries, and if Customs didn't do it as the six-month period was coming to an end, to go to court and order it done. But Customs is already on notice. They are on notice, that's true, but it doesn't hurt to ask. If someone has the power to do something and they haven't done it, the normal remedy is someone to go to them and say, will you please do it? I mean, it happens every day. This is the way the average person looks at things. And here, that isn't what happened. I see that my time is up. Time is up. Thank you, Mr. Carlini. The case will be taken under advisement. Thank you.